We'll call our next case which is 16-15445 Leroy Berry v. Jamie McGowan. Take your time whenever you're ready Mr. Grant. Good morning, my name is Jeff Grant on behalf of Appellants Deputy McGowan and Sheriff Ivey. I think the place to start is with the false arrest claims against the deputy, both under federal and state law. And the court, taking the federal claim first, the court denied qualified immunity to Deputy McGowan based on facts that are not facts in this case. The court based its ruling that Deputy McGowan was not entitled to qualified immunity because the court found that Mr. Berry immediately released the fight participant Elantra McDaniel from his bear hug grasp when he saw the officer. No, not when he saw the officer, when the officer told him to release her, right? Whether that's right or wrong, that's what the district court found, right? It doesn't matter whether he released him when he saw the officer because at that point there's no command and no attempt by the officer to do anything with her, right? As the officer is coming, if he has her in a bear hug, at that moment in time he's done nothing wrong, right? Until the officer either tries to get a hold of her or gives him a And what the district court said was that he immediately released his cousin when Deputy McGowan attempted to gain control over Elantra McDaniel. And this is what I disagree with because Mr. Berry's own testimony is he was holding on to Elantra, Deputy McGowan took her arm, Berry turned around, recognized it was an officer and he said, Officer, I have her, I won't let her go down the road and you don't need to be twisting her arm. Just to utter those words is going to take two to three seconds. So that's the point on this appeal. And then when the officer says release her, he releases her. According to his version of events and the version of events of at least one of the other witnesses, right? Well, I would disagree with that because one of the witnesses, Wendell Marshall, I believe said it was a two to three second tug of war between Berry and Deputy McGowan. Then there would be an issue of fact. Pardon me? Why wouldn't that then be an issue of fact? Well, again, you have to take the evidence in light most favorable to Berry and eliminate issues of fact for purposes of qualified immunity. I'm going off the Robinson versus Arregueta case. Eliminate all issues of material fact. You take the evidence in light most favorable to Berry. And then based on that, is the officer entitled to qualified immunity? And our position is that that two to three second obstruction, when Berry knew, he knew it was an officer, he was still holding on to her, and he uttered words saying I have her, I won't let her go down the street, and you don't need to be twisting her arm. That is enough to satisfy obstruction. And from a reasonable officer point of view, that should be enough to allow Deputy McGowan to be entitled to qualified immunity. I thought his testimony, excuse me, was that as soon as he felt the officer's arm there, he released her. That's my understanding of the testimony. Okay. Well, there's some testimony to that effect, right? Some witnesses, for example, doesn't Mr. Brown say, this is Mr. Brown's testimony, quote, Mr. Berry was holding on to her. He had her from fighting. The cop grabbed her wrist and pulled. And when he grabbed her wrist and went to pull on her and told Berry to let her go, he let the girl go. Okay. And I'm not sure what, if that's from the criminal trial testimony? I don't know either. It's at docket entry 41 at page 10. I don't know if that's an excerpt from the criminal trial or from a deposition in this case. What difference does it make as long as it's evidence in the case? Understood. And doesn't it create a material issue of fact? Here's the thing. Mr. Berry, the criminal trial was based on whether he committed battery on a law enforcement officer. So the questions were not really pointed as to whether or not he obstructed or opposed the officer in any way, be it momentarily. But even so, we have to look at the evidence that is in the record in the light most favorable to Mr. Berry. Understood. And if you look at that evidence in the light most favorable to Mr. Berry, it certainly appears that there is an issue of material fact about whether he released her as soon as he realized that the officer was trying to take control of her. And if that's the case, why isn't this appropriate to have summary judgment denied? Because our point is that Mr. Berry himself acknowledges that there was at least a temporary resistance based on him continuing to hold her and him uttering those words. Now, what you're saying is he's able to then create an issue of material fact by pointing to cherry-picking a certain witness's recollection of how it happened. But Berry himself is the one who's saying, yes, I was holding her. I recognize it was the officer. So I think the sequence of events is slightly different. I think he said, let's see, officer, I got her. I won't let her go down the road. And then as soon as he understood that the officer was trying to take McDaniel from him, then he released her. As soon as he realized that McGowan was twisting McDaniel's arm, he immediately let her go. That was the evidence that I saw on the record from Mr. Berry. Yes. And when I took his deposition, I asked him, when you said, officer, I got her, I won't let her go down the road, were you still holding out to her? Yes. And then I asked him, Mr. Berry, when you said, officer, you don't need to be twisting her arm, were you still holding on to her? His testimony was yes. It was then that he released her. That's our point. He released her when he realized that the officer was twisting her arm. Okay, yes. Well, that's different than holding on to her when he realizes the officer is twisting her arm. I mean, that's the problem here, right? It seems to me that when you look at the record in the light most favorable to Mr. Berry, there is an issue, a material issue of fact over whether he resisted or refused to obey in any way the officer's instructions. My response to that would be this. The facts are the facts from Mr. Berry. What he said he did, okay, you have to take that in the light most favorable to him. Granted. So based on that, he was still holding on to her. He felt the tugging. He said don't be twisting. You don't have to be twisting her arm. However, you have to analyze qualified immunity from the officer's perspective. Would a reasonable officer under these circumstances consider the temporary, albeit short, brief, hesitation to release this fight participant to the deputy's control? Would a reasonable officer consider that obstruction? Well, apparently he didn't until after several other events had happened, and Mr. Berry was still standing there peaceably and waiting for the end of the entire arrest to occur. He charged him with battery on a law enforcement officer, and he did not feel the need to also charge him with resisting with or without violence. Yes, but he did not charge him with battery until after the entire thing had occurred and Mr. Berry was still peaceably standing and waiting and watching the entire thing that had occurred. Well, that's true because Deputy McGowan had to attend to the fight that was still going on and deal. I mean this was a whole crowd of people. So once that was put under control, then Mr. Berry was placed under arrest. And I'd like to just – it's a Middle District of Florida case cited in our brief, Opolinsky v. G. And it involved a Tampa Bay Buccaneers game where some rowdy fans were being – the daughter was being escorted out of the stadium. So that seems like a different kind of case because there, unlike here, the defendant in that case, or I guess the mother in that case, affirmatively grabbed the daughter's hand after the daughter was already in custody of the officer. Here we have Mr. Berry holding on to Ms. McDaniel, right, before the officer grabs her. So that seems very different. There's an affirmative step on the part of the mother in Opolinsky that does not occur in Berry. Is there something – is there some reason why that shouldn't be important? I would agree with that. But the point being that it was the amount of time, just making that brief attempt to grab the daughter's hand, whether or not she actually did it or not, the court found that was sufficient to establish at least arguable probable cause for obstructing or opposing. And the court relied on the 11th Circuit case Dacre v. Stubbe, which is a 2013 case, and that involved a defendant telling the officer he's not coming in without a search warrant and putting his arms up and just blocking him momentarily from executing a search warrant, just a momentary obstruction. That's the point here. And that's what we have in this case. And from the officer's perspective, we believe he should have been granted qualified immunity. All right. Thank you very much. Thank you.  Good morning, Your Honors. Ron Yeo of Whiten Case in Miami on behalf of Mr. Leroy Berry. I wanted to begin by just pointing out the area of the deposition testimony that my colleague was talking about with Judge Rosenbaum. It's on page 59 of docket entry 33. It is correct that he asked Mr. Berry, would you agree it's safe to say when you said, sir, I got her, you were still holding her at the time. But then on page 60, he says, would you agree with me that you told the officer, you don't have to twist it before you let her go or before you let go of her. And Mr. Berry responded no. And I think that's a key distinction there because at the moment in time that Mr. Berry is holding Ms. McDaniel and the officer comes over and he assures her that he's not going to let her join this fight, at that moment in time Mr. Berry has no idea what the officer wants him to do, and then when he realizes he wants him because the officer is tugging. And in fact there's some testimony in the record the officer never issued any verbal command, never said anything to Mr. Berry, drop her, let her go, et cetera. So Mr. Berry had to intuit what the officer wanted him to do and was still able to comply immediately. After he let her go, he still got her arm twisted and he's probably just saying you don't have to twist her arm, meaning she's not the problem officer. But at that point he's already let her go according to Mr. Berry's testimony. So it's in that one sentence of time, not two sentences of time, that Mr. Berry is able to release Ms. McDaniel not knowing what Deputy McGowan wants him even to do. And I just don't see how any reasonable officer could have had probable cause to arrest for resisting without violence. You're saying there's a way to read his testimony to indicate that his comment about the twisting of the arm was made after he released her? Correct. I don't even know that the twisting of the arm comment would have, that that extra moment would have even constituted resisting. That could have been as he's letting her go. That could have been, it's such a bang, bang moment that this is happening in. And while my colleague is correct that there's testimony that was two to three seconds, that's not the standard on qualified immunity, that there is testimony here and there is testimony there. We're taking the testimony in the light most favorable to Mr. Berry. The testimony you just read to us, if nothing else, seems to create a genuine issue of material fact as to whether there was arguable probable cause to make the arrest. Correct. I believe Mr. Berry's testimony on pages 59 and 60 shows that he released her at the moment he realized the officer wanted her. And that would create an issue of material fact for the court to have correctly denied qualified immunity to Deputy McGowan. And I also wanted to address the Opelinski case. Who was, just to get the other side of the, what was the officer's testimony? The officer's testimony was quite different. In this case. In this case, correct. It was quite different, in fact. There's agreement that this happened in the middle of the afternoon in broad daylight. And at that point, and that Mr. Berry was there before the officer. Mr. Berry's on his way home from work. He sees his cousin, his 14-year-old cousin. We know the 911 call was because of fighting between teenage girls. So in stark contrast to the facts we heard about in the case earlier this morning. And when Officer McGowan shows up, that's where the testimony completely departs. Mr. Berry and a number of corroborating witnesses say that. The officer's version, at least in part, is that he goes to try to get the young lady. Correct, is that he grabbed her. Right, and then that's when your client interferes. Correct. It's completely opposite. That when she proceeded to rejoin this argument or this fight, very emotional. That Deputy McGowan's testimony is that he had to grab her and restrain her. But that's in complete contrast to Mr. Berry and a number of witnesses. Ms. Espinoza, Ms. McDaniel herself, who's the one being held, the younger cousin. That Mr. Berry grabbed her, and then Deputy McGowan came over to take her away from Mr. Berry. So at this point in time, Mr. Berry thinks he's doing a good deed, a good service. He's breaking up a fight among teenagers. He realizes Deputy McGowan has a different idea of what should be done, and he releases her immediately. That's what the district court found. That's what this court should also find in the record and affirm. I did want to mention the Opelinski case because I do think it's materially different. In that case, the officer comes. He gives a warning to this disorderly woman, and then he comes back and removes her from her seats in the stadium. And her family follows, including her mother. When they get out to the stadium ramps, so at this point the defendant in that criminal case is in the officer's custody. They're out on the stadium ramps. It's clear what the officer's intentions are, and that is the point in time which the mother grabs the daughter's hand and says, where are you taking her? So I agree that a momentary grab could give an officer arguable probable cause to arrest for resisting without violence. But that situation is completely different because at that point, the mother knew exactly what the officer was doing with her. At the moment, Mr. Berry knew exactly what the officer wanted to do with her. He lets her go. He already has possession of her. So it would be completely the opposite set of facts. The only similarity between those two cases is that we're dealing with a set of family members, and that's it. Those cases are, that case is completely distinguishable. And I think also I wanted to point out Judge Rosenbaum's point, I think is important here, is that both before this incident and after this incident, there's no testimony, and taking the testimony in the light most favorable to Mr. Berry, there's no testimony that he continued to resist. The testimony indicates that he sat there peaceably, calmly, waiting for the officer to return, didn't try and flee. There was no additional conduct. The conduct is entirely based on that brief moment in time in which he releases Ms. McDaniel. And for those reasons, I don't think the officer had arguable probable cause to arrest and is not entitled to qualifying immunity. I submitted yesterday some supplemental authority to the court. I have paper copies if anybody needs. But I think those cases just show that because somebody asks a question, clarifies, tries to ascertain the officer's intent, but perhaps doesn't do it as fast or in the manner the officer wants right away even, the court was willing to find there was no arguable probable cause. I think here the record taken in the light most favorable to Mr. Berry shows that the moment he knew what the officer wanted, he let her go. I think it's as simple as that. There are also some state law claims in this case. Candidly, there was no response in the answer brief filed in this case to the state law claims. I'm not sure if the court wants to hear about them. Well, I guess the short answer is that Mr. Grant didn't address them. And if you want to address them, then we'll certainly give him a chance to do that in his rebuttal case. It's your choice. Right, okay. Mr. Nichols, the former counsel for Mr. Berry, not Mr. Grant. No, no. That Mr. Grant did not address- Oh, in his opening time. State law claims in his opening time, so- Understood, understood. He would like to address them. Understood. We'll certainly give him the chance to do that in rebuttal. Right.  The state law claims, I think, are a question of whether- Basically, whether Sheriff Ivey or Deputy McGowan will ultimately be held- will ultimately be standing civil trial on this cause of action. There's evidence in the record here, taking the evidence in the light most favorable to Mr. Berry, that the officer called him a son of a bastard, that the officer had said something to Mason McDaniel, Ms. Espinoza's testimony says that, that he may have pushed Mr. Berry. I think all of those questions leave a material question of fact that can be decided at a later point to decide ultimately whether Deputy McGowan or Sheriff Ivey would be the party remaining in the case. But that question does not defect the underlying probable cause determination. So the state law claim of false arrest and the federal claim of false arrest, if this court finds that there was no arguable probable cause, those two claims should remain. But the difference in the state law claim is against whom. And unless the court has any further questions, we respectfully ask that this court affirm the district court order in entirety. Thank you. All right. Thank you very much, Mr. O'Neill. Mr. O'Neill? Yes, sir. To address Mr. Berry's deposition testimony, I'll read it. And it's between pages 56 and 59. I don't have the exact lines right here, but it's at page 12 of our brief. You agree when you're holding her and you feel a tugging, you look and you see it's the officer and you tell the officer, sir, I got her. Would you agree? Yes, yes. Would you agree it's safe to say that when you said, sir, I got her, you were still holding her at the time? And you also said in your criminal trial that you told the officer, but you don't have to twist it, I got her. Do you recall saying that to him? I told him don't be twisting her arm. So I guess to the point, maybe the follow-up question was not asked. Okay. At exactly what point in time did you release her? At least we've got him holding onto her, saying, recognizing it's a law enforcement officer, recognizing he's tugging on her arm, saying, officer, I got her. I won't be letting her go down the road. So, I mean, we've got that. And the point is, from Deputy McGowan's standpoint, he should have been entitled to qualified immunity based on that. You can agree. You can not agree. That's why we're here. But that's the facts, and we believe based on those facts he should have been entitled to qualified immunity on that. As to the state law false arrest claim against the deputy, yeah, it's probable cause in that case. So if you find arguable probable cause, then you're not necessarily finding probable cause. But if you find probable cause, then the state law false arrest case should go away as well. Well, everybody agrees that with regards to those two claims, the issue of probable cause or arguable probable cause determines both issues with regards to the two false arrest claims. They're both based on the same underlying predicate. And as it relates to the false arrest claim against the sheriff, there was a jurisdictional question issued in that regard. And there's a case that states that, again, it's the inextricably intertwined concept here. But the Valderrama v. Rousseau 11th Circuit 2015 case said that plaintiff state law claims for false arrest are inextricably intertwined with an issue. The existence of arguable probable cause that is properly before the court on the officer's appeal from the denial of qualified immunity. So as it relates to the false arrest claim against the sheriff, the court can exercise jurisdiction over that. If there's no other questions, I believe we've presented our case here. All right, thank you very much, Mr. Grant. You've both done a good job. Thank you. Mr. Yor, we know we were doing this pro bono for Mr. Berry, and we appreciate your service. Thank you.